# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIREARMS POLICY COALITION, INC. and DANIEL FRANCISCO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. ) |
| MATTHEW PLATKIN, Attorney General of New Jersey, and PATRICK CALLAHAN, Superintendent of the New Jersey State Police, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Bradley P. Lehman (No. 129762014)
WHITEFORD, TAYLOR & PRESTON LLC
600 North King Street, Suite 300
Wilmington, Delaware 19801
(302) 295-5674
blehman@whitefordlaw.com

OF COUNSEL:
Chad Flores
Flores Law PLLC
917 Franklin, Suite 600
Houston, Texas 77002
(713) 364-6640
*Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

# Table of Contents

Table of Contents.................................................................................. 2

Local Civil Rule 10.1 Statement .......................................................... 3

I.    Introduction ................................................................................ 4

II.   Jurisdiction ................................................................................ 6

III.  Venue ......................................................................................... 7

IV.   Parties ........................................................................................ 8

      A.    Plaintiff Firearms Policy Coalition, Inc. .............................. 8

      B.    Plaintiff Daniel Francisco.................................................... 9

      C.    Defendant Matthew Platkin................................................ 10

      D.    Defendant Patrick Callahan................................................ 10

V.    Facts ..........................................................................................11

      A.    The Second Amendment protects short-barreled rifles. ......................11

      B.    New Jersey bans short-barreled rifles. ............................... 14

      C.    New Jersey's SBR ban causes Plaintiffs irreparable harm.................. 16

VI.   Causes of Action ...................................................................... 18

      Count One ................................................................................ 18

Declaration of Counsel Pursuant to Local Civil Rule 11.2 .................................... 24

## Local Civil Rule 10.1 Statement

The mailing addresses of the parties to this action are:

Firearms Policy Coalition, Inc.

5500 Painted Mirage Road, Suite 320

Las Vegas, Nevada 89149


Daniel Francisco

7 Harrison Avenue,

Englishtown, New Jersey 07726


Matthew Platkin

Office of the Attorney General of New Jersey

25 Market Street

Trenton, New Jersey 08611


Patrick Callahan

New Jersey State Police

P.O. Box 7068

West Trenton, New Jersey 08628

## I.    Introduction

1.    The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. As protected by this constitutional provision, Plaintiffs, and all other law-abiding adults in New Jersey, have a fundamental, constitutionally guaranteed right to keep and bear arms for defense of self and family and all other lawful purposes. And the Second Amendment's expansive text means it "extends, prima facie, to all instruments that constitute bearable arms." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

2.    Rifles that have barrel lengths of less than sixteen inches or overall lengths of less than twenty-six inches—short-barreled rifles (SBRs)—are popular. And except in New Jersey and a small handful of jurisdictions, SBRs are commonly chosen for lawful purposes such as self-defense, training, competition, and other lawful purposes.

3.    Indeed, rifles that have shorter barrel or overall lengths are advantageous to users in close quarters, such as the defense of a home, because it enables the firearm user to be more maneuverable moving through and around obstacles like doorways and corners. They also can be lighter or easier for some to hold and use effectively, which can enable more controlled and accurate placement of shots fired at a target. At bottom, an SBR is simply a rifle that is more compact and easily controlled and slightly longer and less portable than a handgun.

4

4.     Rifles—including SBRs—are unquestionably "arms" under the Second Amendment's text. And rifles—including SBRs—are in common use in the United States. The ATF has reported that, as of May 2021, there were 532,725 SBRs registered with the agency. Three years later, the ATF reported that the total SBR registrations increased to 870,286. Given the trend in SBR registrations, there may be over a million short-barreled rifles registered with the ATF today. And crimes using rifles of any kind—let alone SBRs—are exceptionally rare. Because they are rarely used in crimes, it must follow that SBRs are in common use for lawful purposes.

5.     The right to keep and bear arms presumptively protects the People's right to keep and bear *all* arms. If an item qualifies as an "arm," the Second Amendment's protections apply to it. The government must then shoulder the burden of proving, at least, that there is a historical tradition of regulating the arms to support the challenged regulatory scheme. But SBRs are neither dangerous nor unusual, and there is no historical tradition of prohibiting SBRs. SBRs thus cannot be banned.

6.     New Jersey, however, unconstitutionally prohibits—on pain of serious criminal sanctions and potentially years of imprisonment—typical, law-abiding people from buying, owning, and lawfully using SBRs. In no uncertain terms, the ban's leading provision outlaws "possession" of any short-barreled firearm as a third-degree crime, N.J. Stat. Ann. § 2C:39-3(b) (West 2025), defining that term to

cover any "rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches," N.J. Stat. Ann. § 2C:39-1(*o*) (West 2025).

7.     The New Jersey SBR ban codified by the State's statutes and enforced by the Defendants plainly violates the right to keep and bear arms secured by the Second and Fourteenth Amendments and flouts Supreme Court precedents.

8.     Law-abiding individuals, such as Plaintiff Daniel Francisco, would acquire, possess, and use these historically rooted, widely owned weapons for lawful purposes in New Jersey, yet now face felony prosecution for it. This action demands declaratory and injunctive relief against Defendants, whose enforcement perpetuates an ahistorical infringement on constitutional liberties, irreparably harming plaintiffs by denying them an effective means of armed self-defense. New Jersey's SBR ban must be declared unconstitutional and its enforcement enjoined.

## II.    Jurisdiction

9.     28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States.

10.     28 U.S.C. § 1343 supplies the Court with original federal question jurisdiction over this action because it is an action to redress the deprivation, under

color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

11.    This action seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America, 28 U.S.C. § 1651(a), 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

12.    There exists an active, justiciable controversy amongst the parties about whether Defendants' enforcement of New Jersey's SBR ban violates Plaintiffs' rights under the Constitution. Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

### III.    Venue

13.    This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred here. *See* 28 U.S.C. § 1391(e)(1)(B).

14.    This Court constitutes a proper venue for this action because a substantial part of the property that is the subject of the action is situated here. *See* 28 U.S.C. § 1391(b)(2).

## IV.    Parties

### A.    Plaintiff Firearms Policy Coalition, Inc.

15.    Plaintiff Firearms Policy Coalition, Inc. ("FPC"), is a nonprofit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, and members across the country.

16.    FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, which include the individual Plaintiff named herein.

17.    Plaintiff FPC has standing to bring this action on behalf of its members because it meets Article III's and the Supreme Court's organizational standing requirements. *See, e.g.*, *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023). In particular, standing exists because (a) FPC's members would otherwise have standing to sue in their own right, (b) the interests FPC seeks to protect are germane to its purpose; and (c) neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit. FPC members like and including the individual Plaintiff have standing to challenge New Jersey's SBR ban in their own right because they are law-abiding citizens who reside in or visit New Jersey, desire to purchase, possess, and use SBRs for lawful purposes such as home self-defense, training, and competition shooting, and would do so but for the Defendants' enforcement of the SBR ban's onerous criminal penalties. The interests to be protected are germane to FPC's purposes because the action seeks to protect peaceable gun owners from unconstitutional action by the Defendants, including the violation and chilling of FPC's members' constitutionally protected rights, which is germane to FPC's mission. The claims do not require participation of FPC's individual members because they turn on pure questions of law regarding the ban's constitutionality under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), without need for individualized proof.

### B.    Plaintiff Daniel Francisco

18.    Plaintiff Daniel Francisco is a law-abiding citizen of the United States of America and a resident of the State of New Jersey who lives in Englishtown, New Jersey (Monmouth County). He is and was at all relevant times a member of FPC.

19.    Plaintiff Francisco is fully eligible to acquire, possess, and carry firearms and ammunition under the laws of his state of residence and under federal law, just as any responsible citizen in good legal standing would be. He is over the

age of 21, and he is not subject to any criminal convictions, restraining orders, mental health adjudications, or other conduct-based statuses that might arguably preclude him from exercising the rights protected by the Second Amendment.

### C.    Defendant Matthew Platkin

20.    Defendant Matthew Platkin is the Attorney General of New Jersey and is sued only in that official capacity. His principal office is in the City of Trenton in Mercer County, New Jersey.

21.    Defendant Platkin is responsible for the administration and enforcement of New Jersey's SBR ban. He is the "chief law enforcement officer" tasked with "general supervision of criminal justice." N.J. Stat. Ann. § 52:17B-98. He serves as (among other things) head of the Department of Law and Public Safety, and as such, is responsible to "[c]o-ordinate the inspectional and law enforcement activities of the department." N.J. Stat. Ann. § 52:17B-27(a). In these ways and more, he is empowered to initiate civil and criminal actions to enforce state laws, delegate enforcement authority to subordinate officers, and defend the constitutionality of statutes like the SBR prohibition in litigation.

### D.    Defendant Patrick Callahan

22.    Defendant Patrick Callahan is the Superintendent of the New Jersey State Police and is sued only in that official capacity. His principal office is in the Township of Ewing in Mercer County, New Jersey.

10

23.    Defendant Callahan is responsible for the administration and enforcement of New Jersey's SBR ban. As State Police Superintendent, Defendant is "[t]he executive and administrative head of the Division of State Police." N.J.S.A. § 52:17B-7. This entails responsibility for the general enforcement of New Jersey's criminal laws throughout the State, including investigation, arrest, and referral for prosecution. His duties encompass training and directing state troopers in firearms regulation compliance, issuing guidance on enforcement protocols, and coordinating with local law enforcement to uphold the SBR ban.

V.    **Facts**

A.    **The Second Amendment protects short-barreled rifles.**

24.    Short-barreled rifles are a well-established feature of America's historic tradition. *See generally* Joseph G.S. Greenlee, *The Tradition of Short-Barreled Rifle Use and Regulation in America*, 25 Wyo. L. Rev. 73 (2025)*.* They are in common use and they are not more dangerous than longer rifles or their shorter cousin, handguns. *Id.* They are for all constitutional purposes the same as other common, constitutionally protected arms. *Id.*

25.    A short-barreled rifle, commonly known as an SBR, is a firearm designed to be fired from the shoulder, featuring a rifled barrel for improved accuracy, but distinguished by its shortened dimensions—specifically, a barrel

11

length of less than 16 inches measured from the breech to the muzzle, or an overall length of less than 26 inches if modified from a standard rifle.

26.    While not necessary to this Court's inquiry, short-barreled rifles are uniquely useful for home defense and close-quarters shooting activities, which explains why they are commonly chosen by law-abiding citizens for those and other lawful purposes. SBRs provide enhanced maneuverability in confined spaces, such as homes, due to their compact size, allowing quicker navigation around corners, doorways, and hallways compared to full-length rifles. Their lighter weight and reduced protrusion minimize fatigue and improve control during prolonged defensive scenarios, making them ideal for one-handed or supported firing in tight quarters. They maintain effective ballistic performance for self-defense ranges (under 100 yards typical in homes), with reduced recoil compared to pistols, enhancing accuracy without compromising lethality. Beyond maneuverability during use, SBRs permit safe storage of defense instruments in accessible spaces. These features are especially relevant to states like New Jersey, where urban/suburban dwellings often have spatial constraints that are very material to the choice of home-defense firearm.

27.    Short-barreled rifles are in common use. As of May 2024, Bureau of Alcohol, Tobacco, Firearms and Explosives documents confirm the registration of roughly 870,000 SBRs throughout the United States.

28.    Short-barreled rifles are not dangerous or unusual firearms. They operate essentially the same as full-length rifles in mechanics and ballistics but offer superior maneuverability, akin to 19th-century carbines used by civilians for protection. In fact, semiautomatic SBRs operate identically to both semiautomatic rifles and semiautomatic pistols. The former was already determined by this Court to be constitutionally protected, in at least one instance, *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421 (D.N.J. 2024); and the latter was determined to be constitutionally protected by the Supreme Court in 2008, *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

29.    The safe and usual use of SBRs and their predecessors has long historical roots, going back to historical equivalents like colonial blunderbusses (12 to 14-inch barrels) used for property protection and travel, and 19th-century pocket rifles (8 to 24-inch barrels) advertised for hunting and defense. Pistols with detachable shoulder stocks, functionally identical to modern SBRs, were common in the Founding Era (e.g., large-caliber pistols with 11 to 16-inch barrels used by cavalry) and the 19th century (over 1 million Mauser C96s produced, many with stocks for civilians). Cut-down rifles for repair or wartime use (e.g., Civil War modifications to 17-inch barrels) were routine, with no stigma of unusual danger. Modern SBRs mirror these traditions, with no disproportionate criminal use; their

regulation stems from the arbitrary 1934 NFA inclusions to prevent handgun circumvention, not inherent unusualness.

**B.    New Jersey bans short-barreled rifles.**

30.    New Jersey law bans SBRs. The Defendants are responsible for administering and enforcing New Jersey's SBR ban.

31.    Primarily, New Jersey codifies its SBR ban in New Jersey Code of Criminal Justice Section 2C:39-3, as defined by the applicable provision of Section 2C:39-1. The Section 2C:39-3 banning provision criminalizes possession of "any sawed-off shotgun" and the Section 2C:39-1 defining provision deems "sawed-off shotgun" to include all SBRs. Section 2C:39-3(b) bans any "sawed-off shotgun" with unmistakable clarity:

> Prohibited Weapons and Devices
> …
> b.  Sawed-off shotguns. Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree.

N.J. Stat. Ann. § 2C:39-3(b) (West 2025). With similar clarity, the Section 2C:39-1(*o*) defining provision makes "sawed-off shotgun" include all SBRs:

> *o.* "Sawed-off shotgun" means any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches.

14

N.J. Stat. Ann. § 2C:39-1(*o*) (West 2025). Thus, New Jersey law makes possession of an SBR a crime of the third degree. N.J. Stat. Ann. § 2C:39-3(b). The crime carries a term of imprisonment between three and five years. N.J. Stat. Ann. § 2C:43-6(a)(3).

32.    Defendant Platkin as Attorney General of New Jersey and Defendant Callahan as Superintendent of the New Jersey State Police are responsible for the administration and enforcement of New Jersey's SBR ban.

33.    Additionally and/or alternatively, New Jersey law unconstitutionally proscribes SBRs with (1) New Jersey Code of Criminal Justice Section 2C:39-9(b), the law that criminalizes any "person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any sawed-off shotgun," N.J. Stat. Ann. § 2C:39-9(b) (West 2025), and/or (2) New Jersey Code of Criminal Justice Sections 2C:39-5, 2C:58-3, and 2C:39-9(b), the laws regulating "assault firearm[s]," *e.g.*, N.J. Stat. Ann. § 2C:39-9(g) (West 2025), which the Defendants are likewise responsible for the administration and enforcement of. Insofar as the Defendants' enforcement of these laws proscribes the constitutionally protected conduct regarding SBRs that Plaintiffs seek relief about, the enforcement of these other laws regarding SBRs is equally unconstitutional and this action challenges them in conjunction with its challenge to the Defendants' primary enforcement justification.

**C.    New Jersey's SBR ban causes Plaintiffs irreparable harm.**

34.    Plaintiff Francisco imminently intends to acquire, possess, and use for lawful purposes (self-defense of his home) SBRs that New Jersey proscribes under the "sawed-off shotgun" prohibition of New Jersey Statute § 2C:39-3. In particular, but for Defendant's enforcement of New Jersey's SBR ban, Plaintiff Francisco would buy, own, and lawfully use a Colt AR-15 with a barrel length of less than 16 inches and overall length of less than 26 inches. In addition, but for Defendant's enforcement of New Jersey's SBR ban, Plaintiff Francisco would acquire, possess, and lawfully use other SBRs.

35.    Plaintiff Francisco would like to engage in this constitutionally protected conduct because of—not despite—the unique combination of features that make SBRs superior to other constitutionally protected arms for home defense. Unlike handguns, which lack shoulder support and suffer inferior ballistic performance, SBRs offer Plaintiff Francisco enhanced stability, accuracy, and terminal effect while retaining the compactness necessary for confined environments. And unlike full-length rifles, which can be unwieldy indoors, SBRs allow Plaintiff Francisco to maintain rifle-grade precision and control in constrained settings. This intermediate profile makes SBRs Plaintiff Francisco's most suitable tool for defensive readiness in his urban/suburban home environments, where real-world conditions demand both agility and reliability.

36.    But for the enforcement of New Jersey's SBR ban, Plaintiff Francisco would carry out his intended acquisitions, possession, and use of SBRs for lawful purposes. He has the financial means to carry out the transactions, maintains familiarity with the most appropriate sellers, and has made plans to gain and maintain high proficiency in the safe and lawful use of the SBRs.

37.    The Defendants' enforcement of New Jersey's SBR ban is all that stops Plaintiff Francisco from acquiring, possessing, and using for lawful purposes (self-defense of his home) the SBRs of his choice, all clearly proscribed by New Jersey's SBR ban, falling squarely within the ordinary meaning of the applicable statutory definition: "a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches." N.J. Stat. § 2C:39-1. Thus, Plaintiff Francisco reasonably fears criminal prosecution and confiscation if he were to possess such a rifle within New Jersey's jurisdiction, even if it were registered under the National Firearms Act.

38.    Plaintiff Francisco's experience typifies that of the other FPC members, who Defendants' enforcement of the SBR ban irreparably harms. They too reside in New Jersey, desire to purchase, possess, and use mainstream SBRs for lawful purposes such as home self-defense, and would do so but for the continued

enforcement of the SBR ban's severe criminal penalties, which create a credible threat of prosecution enforced by Defendants.

39.    Absent relief from this Court, Defendants will continue to engage in the unconstitutional conduct that has caused Plaintiffs irreparable harm in the past and is causing Plaintiffs irreparable harm at present.

## VI.    Causes of Action

### Count One
### 42 U.S.C. § 1983—Second Amendment

40.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

41.    The Second Amendment provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750, 805–06 (2010); *id.* at 805 (Thomas, J., concurring).

42.    *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), establishes the applicable legal test. When "the Second Amendment's plain text covers an individual's conduct," "the Constitution presumptively protects that conduct," and the state "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 18. The Third Circuit confirmed this rule's method in *Lara v. Commissioner Pennsylvania*

*State Police*, 125 F.4th 428, 434-35 (3d Cir. 2025), *reh'g and reh'g en banc denied*, 130 F.4th 65 (3d Cir. 2025).

43.    The Second Amendment's plain text covers the conduct at issue. Plaintiff Francisco and FPC members like him are plainly "people" to whom Second Amendment protected rights belong. The law at issue stops them from "bear[ing]" arms by criminalizing possession. And most critically, SBRs are plainly "arms" because the Second Amendment "extends, prima facie, to *all instruments that constitute bearable arms*, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582; *see also Bruen,* 597 U.S at 28 ("[E]ven though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense."). Thus, Plaintiffs' conduct is "presumptively protect[ed]" and the state must "justify its regulation…[by] demonstrat[ing] that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 597 U.S. at 17. New Jersey's burden cannot be met.

44.    *Heller* itself established the contours of the main historical tradition at issue: Bearable arms presumptively protected by the Second Amendment cannot be banned unless they are both dangerous and unusual. *Heller*, 554 U.S. at 627; *accord Caetano*, 577 U.S. at 416, 417 (Alito, J., concurring) (because the Second Amendment "guarantees the right to carry weapons 'typically possessed by law-

19

abiding citizens for lawful purposes,'" "[a] weapon may not be banned unless it is *both* dangerous *and* unusual."). Accordingly, where a type of arm is in "common use," the government *cannot* establish a historical tradition of banning it. *Bruen*, 597 U.S. at 21, 47. And there is no historical tradition of banning a class of arms, such as SBRs, "that are well known to be kept for lawful purposes, including self-defense." David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. OF LEGIS. 223, 386 (2024).

45.    Short-barreled rifles, including but not limited to SBRs based on the AR-15 rifle, are common arms in the United States precisely because they are particularly well suited to self-defense in the home. Their safe and normal use is enjoyed by law-abiding citizens across the nation, but not here. Given that this Court has now rightly held that "the AR-15 Provision of the Assault Firearms Law is unconstitutional for the Colt AR-15 for use for self-defense in the home," *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 447 (D.N.J. 2024), New Jersey's ban on the SBR version of those same firearms is likewise unconstitutional.

46.    Defendants' past enforcement of New Jersey's SBR ban violated 42 U.S.C. § 1983 by subjecting Plaintiffs, under color of state law, to unconstitutional abridgments of the Second Amendment protected rights that apply against New Jersey by virtue of the Fourteenth Amendment. In this respect, the

Defendants' conduct constituted an unconstitutional abridgement of Second Amendment protected rights both facially and as applied to these circumstances.

47.    Furthermore, Defendants' present and threatened future enforcement of New Jersey's SBR ban violates 42 U.S.C. § 1983 by threatening to subject the Plaintiffs, under color of state law, to unconstitutional abridgments of those same Second Amendment protected rights. In this respect, the Defendants' conduct constitutes an unconstitutional abridgement of Second Amendment protected rights both facially and as applied to these circumstances.

48.    Vast irreparable harm results. In the past, Defendants' enforcement of New Jersey's SBR ban proximately caused damages to the Plaintiffs. Plaintiffs' damages include, but are not limited to, the irreparable deprivation of their fundamental constitutional right to keep and bear Arms, the chilling effect on conduct protected by the Second Amendment. At present and for so long as Defendants maintain their current posture, the threatened enforcement of New Jersey's SBR ban will continue to proximately cause Plaintiffs those same damages.

49.    Plaintiffs are therefore entitled to a judgment against the Defendants awarding them declaratory relief, injunctive relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

50.     Plaintiffs request a judgment in their favor and against the Defendants.

51.     Plaintiffs request a declaration that enforcement of New Jersey's SBR ban violates 42 U. S. C. § 1983 by unconstitutionally infringing the Plaintiffs' rights protected under the Second and Fourteenth Amendments to the United States Constitution. The requested declaratory relief should extend to both the primary SBR prohibition of N.J. Stat. § 2C:39-3(b) and all of its associated laws, regulations, policies, and procedures, *see supra ¶ 33.* The requested declaratory relief should cover both the Defendants themselves and all of their employees, officers, agents, and representatives, as well as all those acting in concert or in participation with them. The requested declaratory relief should extend to both the named Plaintiffs and the members of Plaintiff Firearms Policy Coalition, Inc.

52.     Plaintiffs request an injunction prohibiting the enforcement of New Jersey's SBR ban. The requested injunctive relief should extend to both the primary SBR prohibition of N.J. Stat. § 2C:39-3(b) as well as all of the associated laws, regulations, policies, and procedures, *see supra* ¶ 33. The requested injunctive relief should cover both the Defendants themselves and all of their employees, officers, agents, and representatives, as well as all those acting in concert or in participation with them. The requested injunctive relief should extend to both the named Plaintiffs and the members of Plaintiff Firearms Policy Coalition, Inc.

53.     Plaintiffs request an award of costs, including reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988 and any other applicable law.

54.     Plaintiffs request all other relief that is necessary to give effect to the Court's judgment and any other relief to which they are entitled.


Dated: July 18, 2025                  Respectfully submitted,

                                      WHITEFORD, TAYLOR & PRESTON LLC

                                      */s/ Bradley P. Lehman*
                                      600 North King Street, Suite 300
                                      Wilmington, Delaware 19801
                                      (302) 295-5674
                                      blehman@whitefordlaw.com

OF COUNSEL:

Chad Flores
Flores Law PLLC
917 Franklin, Suite 600
Houston, Texas 77002
(713) 364-6640

*Pro hac vice* application forthcoming

                          *Counsel for Plaintiffs*

**Declaration of Counsel Pursuant to Local Civil Rule 11.2**

The undersigned hereby states that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct.


WHITEFORD, TAYLOR & PRESTON LLC

*/s/ Bradley P. Lehman*
600 North King Street, Suite 300
Wilmington, Delaware 19801
(302) 295-5674
blehman@whitefordlaw.com

*Counsel for Plaintiffs*

24