## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FIREARMS POLICY COALITION, INC., LUIGI DECECCO, RICHARD FORD, DANIEL FRANCISCO, ERIC LOWMASTER, JAMES SHOCKLEY, HIGH CALIBER ORDNANCE LLC, and LOUIE G'S OUTDOORS, | ) ) ) ) ) ) ) | Civil Action No. 3:25-cv-13522 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| JENNIFER DAVENPORT, Attorney General of New Jersey, and JEANNE HENGEMUHLE, Acting Superintendent of the New Jersey State Police, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

Bradley P. Lehman (No. 129762014)
WHITEFORD, TAYLOR & PRESTON LLC
600 North King Street, Suite 300
Wilmington, Delaware 19801
(302) 295-5674
blehman@whitefordlaw.com

OF COUNSEL:
Chad Flores
Flores Law PLLC
917 Franklin, Suite 600
Houston, Texas 77002
(713) 364-6640
*Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

# Table of Contents

Table of Contents ...................................................................................................2

Summary of the Argument ......................................................................................3

Statement of Facts ..................................................................................................5

I.    Short-barreled rifles are in common use for legal purposes..........................5

II.   New Jersey bans SBRs. ...............................................................................8

III.  Defendants enforce New Jersey's SBR ban. ...............................................10

IV.   New Jersey's SBR ban irreparably harms Plaintiffs.....................................10

Argument...............................................................................................................11

I.    The Count One Second Amendment Claim is meritorious. ...........................12

      A.    The Second Amendment's Text Covers Plaintiffs' Conduct.................12

      B.    New Jersey cannot carry its burden.....................................................16

II.   Plaintiffs are entitled to all requested relief...................................................25

      A.    Individual Plaintiffs .............................................................................26

      B.    Business Plaintiffs ...............................................................................27

      C.    Plaintiffs Firearms Policy Coalition, Inc..............................................28

Conclusion .............................................................................................................29

Certificate of Service .............................................................................................31

## Summary of the Argument

New Jersey's short-barreled rifle ("SBR") ban is unconstitutional under the Supreme Court's settled Second Amendment framework. *Bruen* supplies the rule: when the Second Amendment's text covers the conduct, the State must prove its restriction is consistent with our Nation's historical tradition of firearm regulation. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17–18 (2022). This case is a clean application of that test on undisputed facts.

The plain text of the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 28 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). The Supreme Court has defined "arms" under the Second Amendment broadly with a "general definition" that includes all "modern instruments that facilitate armed self-defense." *Id.* SBRs are "Arms." They are ordinary rifles that are designed and intended to fire from the shoulder and differ from other protected rifles only in barrel or overall length. They use the same receivers, ammunition, and operating systems as longer rifles. That is more than enough to bring them within the Second Amendment's text. *Heller*, 554 U.S. at 582; Caetano v. Massachusetts, 577 U.S. 411, 411–12 (2016) (per curiam).

New Jersey's law is not a regulation; it is a categorical ban. It criminalizes mere possession of a class of rifles based on an arbitrary measurement—turning an

3

otherwise lawful rifle into contraband by a fraction of an inch—and backs that prohibition with years of imprisonment. That is a severe burden on the constitutionally protected right to "keep and bear." *Heller*, 554 U.S. at 582, 584; *Bruen*, 597 U.S. at 24.

Because the text covers Plaintiffs' conduct, New Jersey bears the burden of identifying a "well-established and representative historical analogue." *Bruen*, 597 U.S. at 30 (emphasis omitted). It cannot meet it. There is no Founding Era or Reconstruction Era tradition of banning rifles, let alone by barrel length or overall length. Short-barreled long guns and functional predecessors existed throughout the relevant periods without categorical prohibition. The first federal barrel-length restriction arrived only in 1934—far too late to establish the "well-established and representative" tradition *Bruen* demands—and even that line was a tax-driven, compromise accommodation rather than a historically grounded judgment that short rifles can be banned. *Bruen*, 597 U.S. at 26, 30.

Nor can the State evade *Bruen* by recasting its ban as a public-safety measure. The Supreme Court has rejected interest balancing in Second Amendment cases; what matters is history, not legislative predictions. *Bruen*, 597 U.S. at 29–30. And where a class of arms is commonly possessed by law-abiding citizens for lawful purposes, it cannot be deemed "dangerous and unusual" and therefore cannot be banned. *Heller*, 554 U.S. at 627; *Caetano*, 577 U.S. at 417 (Alito, J., concurring).

This Court has already held that AR-15–type rifles are in common use and protected. 742 F. Supp. 3d at 443–47. An AR-platform SBR is the same protected rifle in a more compact configuration; the Constitution does not permit New Jersey to ban it based on a ruler.

Summary judgment is therefore appropriate. On this record, New Jersey cannot identify a historical analogue for a statewide felony ban on mere possession of a commonly owned class of rifles. Under *Heller*, *Bruen*, and *Lara*, Plaintiffs are entitled to declaratory and injunctive relief.

## Statement of Facts

**I.      Short-barreled rifles are in common use for legal purposes.**

Rifles are ubiquitous firearms, commonly owned and used for lawful purposes including self-defense, hunting, and sport shooting. Recent production alone reflects that reality: ATF reports annual U.S. rifle manufacturing exceeding three million units in each of 2021–2023 (3,934,374 in 2021; 3,577,951 in 2022; 3,119,376 in 2023), contributing to a civilian stockpile exceeding 500 million firearms from 1990–2023. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Commerce in the United States: Annual Statistical Update* (2024). Civilian use is likewise widespread, with approximately 47 million Americans participating in target shooting. *See U.S. Fish & Wildlife Serv., U.S. Dep't of the Interior*, *2022 Target*

*Shooting in the United States: Participation, Demographics, and Relationship with Hunting and Fishing* (2025).

An SBR is simply a rifle—i.e., a shoulder-fired firearm with a rifled bore—whose barrel is under 16 inches or whose overall length is under 26 inches. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Commerce in the United States: Annual Statistical Update* (2024); 26 U.S.C. § 5845(a)(3), (c). Functionally, SBRs operate identically to longer rifles; the salient difference is compactness.

SBRs are widely owned for lawful purposes nationwide. As of May 2024, approximately 870,286 SBRs were registered with ATF, up from about 532,725 three years earlier. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Commerce in the United States: Annual Statistical Update* (2024). Those registered SBRs are widely distributed across the country. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *Firearms Commerce in the United States: Statistical Update 2024*, Ex. 10 (2025) (state-by-state NFRTR data). And registration figures likely understate ownership: in jurisdictions without prohibitions, owners have strong incentives to select non–NFA configurations rather than undertake NFA registration. Consistent with broad civilian demand, the January 2026 reduction of the NFA tax stamp coincided with a sharp spike—approximately 150,000 e-Form applications for NFA items (including SBRs) on the first day alone. *See* National Shooting Sports

6

Foundation, *New Year Buying Surge Shows 2026 Could Be The Year Of Suppressors* (Jan. 6, 2026). In short, SBRs are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624.

SBRs also have deep historical antecedents. Short-barreled long guns and close functional equivalents were common from the Founding through Reconstruction, including blunderbusses used for travel and property protection, nineteenth-century "pocket rifles" marketed for hunting and defense, and stocked pistols that were functionally comparable to modern compact shoulder-fired arms. *See* Joseph G.S. Greenlee, *The Tradition of Short-Barreled Rifle Use and Regulation in America*, 25 WYO. L. REV. 73 (2025). And history does not reflect a tradition of categorical bans on such arms. *See* David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. LEGIS. 223, 386 (2024).

Finally, while irrelevant to this court's inquiry under *Bruen*, the empirical crime data undercuts any claim that rifles—let alone SBRs—are a distinctive driver of criminal violence. Federal statistics show handguns, not rifles, account for the overwhelming share of firearm violence: in 2018, handguns were used in 64.4% of firearm homicides and 91.8% of nonfatal firearm assaults. *See* U.S. Dep't of Justice, Bureau of Justice Statistics, G. Kena & J. Truman, *Trends and Patterns in Firearm Violence, 1993–2018*, at 5–6 (Apr. 2022). And a survey of incarcerated offenders likewise found handguns predominated. *See* U.S. Dep't of Justice, Bureau of Justice

Statistics, C. Harlow, *Firearm Use by Offenders* 3 (Nov. 2001). Rifles—including SBRs—remain a statistical footnote in criminal misuse. But of course, no empirical reality could justify this ban in any event. *Heller* recognized that handguns were the firearm most commonly used in crime and nonetheless held that a categorical prohibition on their possession was unconstitutional. *Heller*, 554 U.S. at 628–29. The Second Amendment does not permit governments to prohibit an entire class of protected arms simply because those arms are sometimes misused.

## II.    New Jersey bans SBRs.

New Jersey's scheme for regulating firearms operates individually and collectively to ban SBRs in New Jersey. The following New Jersey statutes, as well as any and all regulations, policies, and enforcement practices applying them, are herein referred to as New Jersey's SBR Ban:

i.      New Jersey law bans any "sawed-off shotgun" with unmistakable clarity: "Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree." N.J. Stat. Ann. § 2C:39-3(b) (West 2025). The State defines "sawed-off shotgun" to mean "any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by

8

alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches." N.J. Stat. Ann. § 2C:39-1(*o*) (West 2025).

ii.    New Jersey law makes possession of an SBR a crime of the third degree. N.J. Stat. Ann. § 2C:39-3(b). The crime carries a term of imprisonment between three and five years. N.J. Stat. Ann. § 2C:43-6(a)(3).

iii.    New Jersey law criminalizes any "person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any sawed-off shotgun," N.J. Stat. Ann. § 2C:39-9(b) (West 2025).

iv.    New Jersey law bans SBRs through N.J. Stat. Ann. §§ 2C:39-1(w), 2C:39-5(f), 2C:39-9, 2C:58-3, and 2C:58-5, the laws regulating "assault firearm[s]," *e.g.*, N.J. Stat. § 2C:39-9(g).

In these ways, New Jersey's broad SBR ban applies across-the-board to reach all types of short-barreled firearms, including single-shot, bolt-action, manually repeating, and semiautomatic firearms. A paradigmatic example of rifles that New Jersey's SBR Ban reaches is the Colt AR-15-platform, which is indisputably in common use for lawful purposes throughout the United States.

### III.    Defendants enforce New Jersey's SBR ban.

Defendant Jennifer Davenport is the Attorney General of New Jersey. Doc. 10 at 6, ¶ 34. As the State's chief law enforcement officer, she is responsible for administration and enforcement of New Jersey's SBR Ban and general supervision of criminal justice in the State.  *See* N.J. Stat. Ann. § 52:17B-98.

Defendant Jeanne Hengemuhle is the Acting Superintendent of the New Jersey State Police. Doc. 10 at 6, ¶ 36. As the executive and administrative head of the Division of State Police, she is responsible for enforcement of New Jersey's firearm laws, including the SBR Ban. *See* N.J. Stat. Ann. § 52:17B-7.

### IV.    New Jersey's SBR ban irreparably harms Plaintiffs.

Plaintiffs include a group of Individual Plaintiffs, two Business Plaintiffs, and Firearms Policy Coalition, Inc. ("FPC"), all of whom are irreparably harmed by the SBR Ban. The Individual Plaintiffs are law-abiding adults who are fully eligible to possess firearms and would acquire SBRs for lawful purposes—including home self-defense—but refrain because the State criminalizes that conduct and imposes severe penalties. *See* Doc. 8 at 9–11, 19–25. The Business Plaintiffs are federally licensed firearms dealers who would, in the ordinary course of commerce, acquire and sell SBRs to qualified customers but are barred from doing so. *See* Doc. 8 at 12–13, 26–29. FPC's members—including the named Individual and Business Plaintiffs—are likewise chilled in the exercise of their Second Amendment protected rights. *See*

10

Doc. 8 at 7–9, 29–30. The ban thus suppresses constitutionally protected acquisition, possession, and commerce in arms at every level.

## Argument

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute. *E.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Plaintiffs satisfy that standard here. The material facts are undisputed: SBRs are bearable arms; New Jersey categorically bans them; and Plaintiffs seek to acquire, possess, and use these common arms for lawful purposes. The accompanying declarations and exhibits establish each element.

The central issue here—the constitutional validity of New Jersey's SBR Ban—presents a pure question of law. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 427–28 (D.N.J. 2024) (resolving Second Amendment challenge at summary judgment because "the constitutionality of the challenged statutory provisions do[es] not present factual questions for determination in a trial"). Because no factual dispute exists and the legal question is dispositive, Plaintiffs are entitled to judgment as a matter of law.

## I.      The Count One Second Amendment Claim is meritorious.

Count One pleads that the Defendants' enforcement of New Jersey's SBR Ban violated and continues to violate 42 U.S.C. § 1983 by subjecting Plaintiffs, under color of state law, to unconstitutional abridgments of the Second Amendment protected rights that apply against New Jersey by virtue of the Fourteenth Amendment. Doc. 8 at 30-36. This claim is meritorious as a matter of law.

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), establishes the applicable legal test. When "the Second Amendment's plain text covers an individual's conduct," "the Constitution presumptively protects that conduct," and the state "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 18. The Third Circuit confirmed this rule's method in *Lara v. Commissioner Pennsylvania State Police*, 125 F.4th 428, 434-35 (3d Cir. 2025), *reh'g and reh'g en banc denied*, 130 F.4th 65 (3d Cir. 2025), and this Court applied it correctly in *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421 (D.N.J. 2024).

### A.      The Second Amendment's Text Covers Plaintiffs' Conduct.

*Bruen* commands a text as informed by history analysis. As a threshold question, courts determine "whether the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If so, "the Constitution presumptively protects that conduct." *Id.* at 17. The text covers Plaintiffs' conduct at every turn.

12

### 1.    SBRs are "Arms."

The Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. SBRs qualify, falling squarely between two categories of arms the Supreme Court has already recognized as protected: ordinary rifles and handguns. An SBR simply combines features of both—a shoulder-fired rifle platform in a more compact configuration.

An SBR is a rifle—a firearm designed and intended to be fired from the shoulder with a rifled barrel—with a barrel under 16 inches or overall length under 26 inches. *See, e.g.*, 26 U.S.C. § 5845(a)(3). It fires from the shoulder, uses conventional rifle ammunition, and operates identically in mechanics and ballistics to any other rifle. Short-barreled rifles retain similar rifle ballistics while offering enhanced portability; reduced barrel length results in velocity reduction while improving handling characteristics—a tradeoff some individuals choose to make for their individualized defense needs. *See Ron Spomer, Short Rifle Barrel Performance Advantages*, RON SPOMER OUTDOORS, https://perma.cc/3PXD-4F4P.

The key distinguishing feature is dimension. SBRs are increasingly favored for home defense because their compact dimensions allow maneuverability in hallways and doorways while retaining rifle-grade accuracy and terminal performance. *See Why SBRs Are Becoming Popular for Home Defense*,

SUMMERLIN ARMORY (Feb. 4, 2025), https://perma.cc/Z2XN-SJHF. Conversely, SBRs are less maneuverable than handguns, but more accurate. Thus, they fit the specific self-defense needs of many individuals, including Individual Plaintiffs and FPC's similarly situated members.

Rifles are paradigmatic "Arms." This Court has already held that certain AR-15 rifles are in common use and protected by the Second Amendment. *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d at 443–47. An SBR built on the AR-15 platform is still an AR-15—just more compact. Shortening a rifle's barrel does not transmute a protected arm into an unprotected one.

SBRs use the same receivers, bolts, ammunition, and operating systems as their longer counterparts. The sole difference is length, which produces modest velocity reduction while preserving rifle-grade accuracy and terminal performance. *See* 26 U.S.C. § 5845(c) (defining rifles by shoulder-firing and rifled bore, without length minimum). A dimensional tweak cannot strip constitutional protection. *See* Caetano, 577 U.S. at 411–12 (stun guns protected despite novelty).

If stun guns—devices unknown to the Founders—qualify as "Arms" because they "can be readily adapted to use for self-defense," *Caetano*, 577 U.S. at 411–12, rifles with shorter barrels qualify *a fortiori*. The Second Amendment's definition of "arms" "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28. SBRs do precisely that.

### 2.    Plaintiffs are "The People."

The Second Amendment secures the right of "the people" to keep and bear arms. U.S. CONST. amend. II. That phrase "unambiguously refers to all members of the political community"—ordinary, law-abiding citizens. *Heller*, 554 U.S. at 580; *see also Bruen*, 597 U.S. at 70 (Alito, J., concurring) (the right belongs to "ordinary, law-abiding citizens"). Plaintiffs qualify.

The Individual Plaintiffs are law-abiding adult citizens of New Jersey, each over 21, with no criminal convictions, restraining orders, or other disqualifying conditions. *See* Ex. B at 1–2 (Daration of Luigi Dececco); Ex. C at 1–2 (Declaration of Richard Ford); Ex. D at 1–2 (Declaration of Daniel Francisco); Ex. E at 1–2 (Declaration of Eric Lowmaster); Ex. F. at 1–2 (Declaration of James Shockley). The Business Plaintiffs hold valid Federal Firearms Licenses and operate in full compliance with federal and state law. *See* Ex. B at 3-4 (Declaration of Louie G's Outdoors' principal); Ex. E at 3-4 (Declaration of High Caliber Ordnance LLC's principal). FPC's members include the Individual and Business Plaintiffs and others similarly situated. *See* Ex. A at 1-2 (Declaration of FPC's principal). None is disqualified from Second Amendment protection. This element is satisfied.

### 3.    New Jersey's SBR Ban prohibits "Keep[ing and Bear[ing.]."

"Keep" means to "have weapons" and "retain" them in one's possession. *Heller*, 554 U.S. at 582. New Jersey's SBR Ban prohibits this. The statutory scheme

15

criminalizes possession, acquisition, manufacture, sale, transfer, and transportation of SBRs. N.J. Stat. Ann. §§ 2C:39-3(b), 2C:39-9(b). Violation carries three to five years' imprisonment. Id. § 2C:43-6(a)(3). This is not incidental burden—it is categorical prohibition backed by felony penalties. Plaintiffs cannot keep SBRs. The ban extinguishes the right entirely as to this class of arms.

### B.    New Jersey cannot carry its burden.

Because the Second Amendment's plain text covers Plaintiffs' conduct, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. The burden shifts to the State to justify the ban by reference to historical tradition. *Id.* at 24. The government "must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 597 U.S. at 17. To meet this burden, the government must (among other things) demonstrate a sufficient quantum of "relevantly similar" historical analogues that impose "a comparable burden on the right of armed self-defense" and are "comparably justified." *Id.* at 29. New Jersey cannot do so.

To meet its historical burden, the State must do more than cite "some history of regulation." It must identify a well-established analogue for what New Jersey actually did here: a statewide felony ban on the mere possession of a class of rifles defined solely by barrel length or overall length. Laws addressing *misuse*, regulating *carry in "sensitive places*," or imposing individualized conditions on *dangerous*

*persons* do not justify a categorical ban on arms possessed by ordinary, law-abiding citizens. *See Bruen*, 597 U.S. at 29–30; *Rahimi*, 602 U.S. at 699–700.

### 1. There is no Founding Era tradition of banning SBRs or their analogs.

To justify the ban, New Jersey must identify a "well-established and representative historical analogue." *Bruen*, 597 U.S. at 30. It cannot. No Colonial, Founding Era, or nineteenth-century law restricted rifles by barrel or overall length. The historical record contains no prohibition on short-barreled long guns—not one.[1]

The absence is unsurprising. Short-barreled firearms were commonplace throughout the relevant periods. Colonial-era blunderbusses featured 12- to 14-inch barrels and served for property protection and travel. Nineteenth-century "pocket rifles" had barrels as short as 8 inches and were advertised for hunting and self-defense. Pistols with detachable shoulder stocks—functionally identical to modern SBRs—circulated widely from the Founding through Reconstruction. Cut-down rifles saw routine military and civilian use without stigma or restriction. *See* Joseph G.S. Greenlee, *The Tradition of Short-Barreled Rifle Use and Regulation in America*, 25 Wyo. L. Rev. 73, 80–95 (2025). There is "no historical tradition of

---

[11] The relevant historical inquiry begins in 1791, as constitutionally protected rights "are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–35. So the Second Amendment's meaning was fixed at ratification. To the extent incorporation doctrine directs attention to 1868, that later period can confirm—but not alter—the Founding understanding. See *Bruen*, 597 U.S. at 24–28. Under either benchmark, New Jersey's ban lacks the requisite support.

banning a class of arms" like SBRs "that are well known to be kept for lawful purposes." David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. LEGIS. 223, 386 (2024).

The first barrel-length restriction came in the National Firearms Act of 1934—143 years after the Second Amendment's ratification and 66 years after the Fourteenth's. That timing is fatal. Courts must "guard against giving postenactment history more weight than it can rightly bear." *Bruen*, 597 U.S. at 26 (quoting *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2259 (2020)). A Depression Era statute—enacted generations after ratification and untethered to any Founding Era analogue—cannot supply the historical tradition *Bruen* demands.

Furthermore, the NFA's application to short-barreled rifles was a historical accident. The original bill did not restrict rifles by barrel length; a minimum was added only to prevent inadvertent taxation of hunting rifles after Representative Knutson raised concerns that his constituents would not tolerate a steep tax on popular hunting rifles. No one mentioned short-barreled rifles having any criminal use during the Senate hearings. *See* Stephen P. Halbrook, *The Power to Tax, the Second Amendment, and the Search for Which "'Gangster' Weapons" to Tax*, 25 WYO. L. REV. 149, 169–70 (2025).

The constitutional inquiry demands more than post-ratification novelties. Courts must "guard against giving postenactment history more weight than it can

rightly bear." *Bruen*, 597 U.S. at 26 (quoting *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2259 (2020)). And *Rahimi* confirmed that the Second Amendment sharply distinguishes between laws imposing special restrictions on "individuals found to threaten the physical safety of another" and laws that "broadly restrict arms use by the public generally." *United States v. Rahimi*, 602 U.S. 680, 699–700 (2024). New Jersey's SBR Ban falls squarely in the latter category: it prohibits all law-abiding citizens from possessing a common class of arms, without any individualized showing of dangerousness.

### 2.    SBRs are in "common use" and therefore cannot be "dangerous and unusual"

*Heller* and *Bruen* have provided the sole historical tradition that can justify the banning of an arm—the tradition of restricting the use of dangerous and unusual weapons. *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 46–48. To be banned, a firearm must be "*both* dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring in the judgment) (emphases in original).

This conjunctive nature of the dangerous and unusual test follows directly from *Heller*. In that case, the Supreme Court determined that handguns are in common use and then noted that protection for commonly used weapons was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. In addition to using the word "and," the Court did not undertake a separate analysis of whether modern handguns were

19

"dangerous" under the "historical tradition" described. *Id.* Indeed, the Supreme Court has repeatedly held that firearms in common use—and thus, not unusual—are protected without any analysis of danger, *see Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 32, 47. To be sure, the alleged "danger" of handguns was extensively briefed and highlighted by one dissenting opinion, which argued that they were "particularly dangerous." *See id.* at 711 (Breyer, J., dissenting). But despite the fact that the Court was told handguns were used in an "extraordinary percentage of this country's well-publicized shootings, including the large majority of mass shootings," *Heller* still stopped the analysis upon concluding they were in common use. *Hanson v. District of Columbia*, 120 F.4th 223, 272 (D.C. Cir. 2024) (Walker, J., dissenting). *Bruen* also acknowledged the government's argument "that handguns" may have been "considered 'dangerous and unusual' during the colonial period" and concluded that, even if true, the point was now irrelevant because "they . . . are unquestionably in common use today." 597 U.S. at 47; *see also Caetano*, 577 U.S. at 418 (Alito, J., concurring in the judgment) ("[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes."). The direct contrast between dangerousness and common use demonstrates that alleged dangerousness standing alone cannot be a basis for restricting a common type of arm.

And in *Caetano* the Court summarily vacated a determination of the Massachusetts Supreme Judicial Court that stun guns were unprotected on the basis that the Massachusetts court had erred in determining that stun guns are "unusual." *See* 577 U.S. at 411–12; *see also* 577 U.S. at 420 (Alito, J., concurring in judgment) (explaining that "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes *today*"). The Massachusetts court had also found that stun guns were dangerous, but the Supreme Court vacated without addressing that finding. Thus, as Justice Alito observed in concurrence, the Court's per curiam opinion "recognize[d]" that the dangerous and unusual test is a "conjunctive" one. *Id*. at 417. Suppressors and short-barreled rifles are neither dangerous nor unusual.

Regarding their commonality, as of May 2024, more than 870,000 SBRs were registered with the ATF—up from 532,725 just three years earlier. *See* ATF, Firearms Commerce in the United States: Annual Statistical Update (2024). Registration continues to climb. By any plausible metric, SBRs are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624.

Registration data further demonstrates rapid growth in civilian ownership. On the first day the reduced NFA tax took effect (January 1, 2026), Americans filed approximately 150,000 e-Form applications for NFA items, including SBRs—a sixty-fold increase over typical daily volume. *See National Shooting Sports*

21

*Foundation, New Year Buying Surge Shows 2026 Could Be The Year Of Suppressors* (Jan. 6, 2026). This surge confirms both widespread interest and the commonality of SBRs among law-abiding citizens. These registered SBRs are widely distributed nationwide, appearing in substantial numbers in every state (even despite bans like New Jersey's). *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, Firearms Commerce in the United States: Statistical Update 2024, Exhibit 10 (2025) (state-by-state NFRTR data).

The State cannot dismiss these figures as insufficient. The Supreme Court has never required a minimum numerical threshold for "common use." Stun guns—owned by "hundreds of thousands" of Americans—qualified. *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring). If hundreds of thousands suffice for stun guns, hundreds of thousands suffice for SBRs—and the actual figure exceeds 870,000 registered units.

This Court's decision in *Association of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421 (D.N.J. 2024) is dispositive. There, the Court held that AR-15 rifles are in common use and protected, *id.* at 443–47, rightly recognizing the wealth of public evidence showing this, *id.*; *see also, e.g.*, William English, PhD, 2021 National Firearms Survey: Updated Analysis Including Types of Firearms

22

Owned 2 (May 13, 2022); *NSSF, Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation* (July 20, 2022).[2]

An SBR built on the AR-15 platform is the same firearm—same receiver, same mechanics, same ballistics—with a shorter barrel. Reducing barrel length does not transform a constitutionally protected rifle into an "unusual" weapon. If anything, SBRs are better suited to self-defense: their compactness improves maneuverability in confined spaces, where most defensive encounters occur. AR-15 platform SBRs are illustrative of the broad point here—SBRs are just shorter rifles based on the same platforms and functions, whether single-shot, lever-action, pump-action, bolt-action, or semi-automatic; whether fixed-magazine or detachable-magazine fed; and whether rimfire or centerfire.

That "common use" principle is not an invitation to reintroduce interest balancing through the side door. It is the history-derived limit *Heller* identified when

---

[2] Recent Supreme Court opinions confirm these conclusions. The AR-15 is "the most popular rifle in the country," one that is "both widely legal and bought by many ordinary consumers." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141, slip op. at 14 (U.S. June 5, 2025). Indeed, the ATF—the agency charged with administering the Nation's firearms laws—has acknowledged that the AR-15 is "one of the most popular firearms in the United States." U.S. Bur. of Alcohol, Tobacco, Firearms & Explosives, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652 (2022). And Justice Kavanaugh has observed that " [g]iven that millions of Americans own AR-15s and that a significant majority of the States allow possession of those rifles, petitioners have a strong argument that AR-15s are in 'common use' by law-abiding citizens and therefore are protected by the Second Amendment under *Heller*." *Snope v. Brown*, 145 S. Ct. 1534, 2025 WL 1550126, at *1 (June 2, 2025) (statement of Kavanaugh, J., respecting the denial of certiorari).

it recognized a narrow historical tradition of regulating only "dangerous and unusual" weapons. *Heller*, 554 U.S. at 627. An arm that is in common use cannot be "unusual," and therefore cannot be banned consistent with the Second Amendment's historical boundary. *See id.*; *see also Caetano*, 577 U.S. at 417 (Alito, J., concurring). The State accordingly cannot avoid its burden by disputing whether SBRs are sufficiently "useful," by insisting on a judicial assessment of their comparative suitability for self-defense, or by invoking generalized public-safety rationales. *Bruen* forbids that approach, and it assigns the burden where it belongs: on the State to produce a Founding-Era analogue for a categorical prohibition on a class of commonly kept arms. *Bruen*, 597 U.S. at 24, 29–30.

Nor is it a permissible answer that other rifles remain available. *Heller* rejected the notion that a government may ban the chosen class of commonly possessed arms so long as it leaves some alternative arms on the shelf. *Heller*, 554 U.S. at 629. That is especially true where the State's line turns on an arbitrary measurement—here, the difference between a legal rifle and a felony is a fraction of an inch—because it confirms the measure is not a historically grounded limitation on the right, but a categorical ban on a common arm defined by modern policy choice. *See Bruen*, 597 U.S. at 26, 35–36.

## II.    Plaintiffs are entitled to all requested relief.

Each Plaintiff has standing to challenge the Defendants' enforcement of the laws at issue both facially and as applied to these circumstances. For the reasons shown above, Defendants' past enforcement of New Jersey's SBR Ban violated 42 U.S.C. § 1983 by subjecting Plaintiffs, under color of state law, to unconstitutional abridgments of their Second Amendment protected rights that apply against New Jersey by virtue of the Fourteenth Amendment. Defendants' present and threatened future enforcement of New Jersey's SBR Ban violates 42 U.S.C. § 1983 as well, again both facially and as applied to these circumstances.

Vast irreparable harm results. *See, e.g,*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In the past, Defendants' enforcement of New Jersey's SBR Ban proximately caused damages to the Plaintiffs. Those damages include, but are not limited to, the irreparable deprivation of their fundamental constitutionally protected right to keep and bear Arms and the chilling effect on conduct protected by the Second Amendment. At present and for so long as Defendants maintain their current posture, the threatened enforcement of New Jersey's SBR Ban will continue to proximately cause Plaintiffs those same damages.

Because the ban is unconstitutional, each of these Plaintiffs is entitled to the full panoply of declaratory, injunctive, and other relief the complaint seeks. *See* Doc. 8 at 36, ¶¶ 155-159.

25

### A.    Individual Plaintiffs

Each Individual Plaintiff — Luigi Dececco, Daniel Francisco, Richard Ford, Eric Lowmaster, and James Shockley — has standing and is entitled to relief because New Jersey's SBR Ban imposes a credible threat of felony sanction that deters their exercise of Second Amendment protected rights. *See* Ex. B at 1–2 (Declaration of Luigi Dececco); Ex. C at 1–2 (Declaration of Richard Ford); Ex. D at 1–2 (Declaration of Daniel Francisco); Ex. E at 1–2 (Declaration of Eric Lowmaster); Ex. F. at 1–2 (Declaration of James Shockley). All are law-abiding adult citizens of New Jersey, members of Firearms Policy Coalition, and fully eligible under federal and state law to acquire, possess, and carry firearms and ammunition. *Id.*

Each Individual Plaintiff intends imminently to acquire, possess, and use an SBR for lawful purposes, including home defense, but refrains solely because the State criminalizes possession and enforces the ban with felony penalties and potential confiscation. *Id.* But for the ban's enforcement, each Plaintiff would lawfully purchase, own, and possess one or more SBRs. *Id.* The ban's enforcement posture is the only barrier preventing that conduct and creates a reasonable fear of prosecution that chills their exercise of the right.

## B.    Business Plaintiffs

Plaintiffs High Caliber Ordnance LLC and Louie G's Outdoors each have standing to bring this action and are entitled to all of the claimed relief that flows from the unconstitutionality of New Jersey's SBR ban. *See* Ex. B at 2–4 (Declaration of Louie G's Outdoors' principal); Ex. E at 2–4 (Declaration of High Caliber Ordnance LLC's principal). Both are law-abiding New Jersey businesses, members of Firearms Policy Coalition, and holders of valid Federal Firearms Licenses authorizing them to engage in the lawful retail commerce of firearms and ammunition. *Id.* They operate in compliance with applicable law and are fully eligible to acquire, possess, display, sell, and transfer firearms in the ordinary course of business. *Id.*

Each Business Plaintiff imminently intends, in the ordinary course of its licensed operations, to acquire from lawful manufacturers, hold in inventory, and offer for sale short-barreled rifles that are lawfully made and transferrable under federal law but for New Jersey's SBR Ban. *Id.* They seek to engage in this constitutionally and commercially protected activity because SBRs constitute a distinct and in-demand class of rifles. *Id.* But for enforcement of New Jersey's ban, each would lawfully acquire, possess, display, sell, and transfer SBRs to qualified purchasers. *Id.* The ban's enforcement posture is the sole barrier preventing that conduct, creating a reasonable fear of prosecution, inventory forfeiture, and license

27

revocation that chills their exercise of Second Amendment protected rights and causes concrete commercial injury through lost sales and distorted market participation. *Id.*

### C.     Plaintiffs Firearms Policy Coalition, Inc.

Plaintiff Firearms Policy Coalition, Inc. ("FPC"), is a nonprofit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, and members across the country. *See* Ex. A at 1–2 (Declaration of FPC's principal). Plaintiff FPC has standing to bring this action on behalf of its members because FPC's members would otherwise have standing to sue in their own right, the interests FPC seeks to protect are germane to its purpose; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* FPC members, such as the other named Plaintiffs, have standing to challenge New Jersey's SBR Ban in their own right because they are law abiding citizens who reside in or visit New Jersey, desire to purchase, possess, and use SBRs for lawful purposes such as home self-defense, training, and competition shooting, and would do so but for the Defendants' enforcement of the SBR Ban's onerous criminal penalties. *Id.* The interests to be protected are germane to FPC's purposes because the action seeks to protect peaceable gun owners from unconstitutional action by the Defendants, including the violation and chilling of FPC's members' constitutionally protected rights, which is germane to FPC's

mission. *Id.* The claims do not require participation of FPC's individual members because they turn on pure questions of law regarding the ban's constitutionality under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), without need for individualized proof. *Id.*

Each the Individual and Business Plaintiffs' experience typifies that of other FPC members, who Defendants' enforcement of New Jersey's SBR Ban irreparably harms. *Id.* These FPC members desire to engage in constitutionally protected conduct—including to acquire, possess, transfer, transport, and lawfully use SBRs for lawful purposes in New Jersey—and would do so but for the Defendants' enforcement of New Jersey's SBR Ban and its severe criminal penalties, which create a credible threat of prosecution enforced by Defendants. *Id.*

## Conclusion

New Jersey's categorical ban on short-barreled rifles violates the Second Amendment. SBRs are bearable arms in common use for lawful purposes. The Second Amendment's text covers them and New Jersey bears the burden of proving a historical tradition of banning them. It cannot. The Court should therefore grant the Plaintiffs' motion for summary judgment, hold New Jersey's SBR ban unconstitutional, and award Plaintiffs all of the declaratory, injunctive, and other relief the complaint requests. *See* Doc. 8 at 36, ¶¶ 155-159.

Dated: March 17, 2026                    Respectfully submitted,

                                         **WHITEFORD, TAYLOR & PRESTON
                                         LLC**

                                         */s/ Bradley P. Lehman*
                                         600 North King Street, Suite 300
                                         Wilmington, Delaware 19801
                                         (302) 295-5674
                                         blehman@whitefordlaw.com

OF COUNSEL:

Chad Flores
Flores Law PLLC
917 Franklin, Suite 600
Houston, Texas 77002
(713) 364-6640

\**Pro hac vice* application forthcoming

*Counsel for Plaintiffs*

## Certificate of Service

I certify that on March 17, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

Dated: March 17, 2026                    */s/ Bradley P. Lehman*